UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HUBERT E. WALKER on behalf of himself and all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 1:13-cv-00124-TWP-DKL<br>) |
| TRAILER TRANSIT, INC., | )<br>) |
| Defendant. | ) |

**ENTRY ON MOTION TO REMAND**

This matter, a class action contract dispute, is before the Court on Plaintiff Hubert E. Walker's ("Mr. Walker") Motion to Remand (Dkt. 10). Mr. Walker alleges Defendant Trailer Transit, Inc.'s ("Trailer Transit") removal of this case to federal Court (Dkt. 1) was untimely under U.S.C. § 1446(b). Oral argument was held on the motion on Wednesday, May 29, 2013, and the Court took the matter under advisement. For the reasons discussed below, Mr. Walker's motion is **DENIED**.

**I. BACKGROUND**

Trailer Transit is engaged in the business of brokering trucking services by providing its customers semi-tractors so they may haul their trailers. To accomplish this, Trailer Transit leases semi-tractors from independent owner-operator truck drivers, who perform the actual work of picking up, hauling, and delivering the trailers. Trailer Transit enters into Lease Agreements with the independent drivers and pays them 71% of the gross revenues derived from the use of the leased equipment, less any insurance related surcharges and all items intended to reimburse Trailer Transit for special services, such as permits, escort service and other special administrative costs. These special services are charged as separate line items on their

customers' invoices ("Add-On Fees"), and Trailer Transit does not share any percentage of the Add-On Fees with the drivers.

Mr. Walker represents a class of about 1,000 drivers who contracted to lease their semi-tractors to Trailer Transit between September 13, 2001 and May 9, 2012 under a form Lease Agreement.  Mr. Walker alleges Trailer Transit frequently charges customers Add-On Fees that are more than its actual out-of-pocket cost for a service, or charges customers Add-On Fees for services that were never actually performed.  He argues the Add-On Fees are additional revenue which Trailer Transit does not split with the drivers in violation of the Lease Agreement.

This suit was originally filed in Marion Superior Court on September 13, 2011.  (Dkt. 1-1 at 1.)  Judge Timothy Oakes of the Marion Superior Court certified the class on May 9, 2012. (Dkt. 1-4 at 21-23.)  On August 7, 2012, Trailer Transit filed a Motion for Summary Judgment (Dkt. 1-4 at 31-44), and on November 19, 2012 Mr. Walker filed a response in opposition (Dkt. 1-5 at 3-14).  After exchanging e-mails seeking clarification on Mr. Walker's theory of recovery on November 30 and December 3, 2012 (Dkts. 11-2, 11-3), Trailer Transit sent Mr. Walker a request for admissions in which it specifically asked Mr. Walker to admit that he and the class were not entitled to 71% of the out-of-pocket costs of the Add-On Fees. On December 21, 2012, Mr. Walker denied the request for admission which confirmed that he was in fact seeking 71% of the out-of pocket costs. (Dkt. 1-8.)

Trailer Transit filed a Notice of Removal under 28 U.S.C. § 1446(b) on January 22, 2013. (Dkt. 1-9.)  In an affidavit filed with its Notice of Removal, Trailer Transit stated that if it were liable to the class for 71% of the entire amount that Trailer Transit charged its customers for all of the Add-On Fees, the amount would exceed $5,000,000.00.  Dkt. 1-7 at 2, ¶ 9.  Mr. Walker then filed this motion to remand, alleging that Trailer Transit's Notice of Removal was untimely

2

because the latest that Trailer Transit should have known that the amount in controversy exceeded $5,000,000.00 was on November 19, 2012, the date when Mr. Walker filed his Response in Opposition to Trailer Transit's Motion for Summary Judgment.

## II. **LEGAL STANDARD**

The District Court has original jurisdiction over a civil action in which the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). A class action may be removed in accordance 28 U.S.C. § 1446. However, the notice of removal must be filed within 30 days after the receipt by the defendant of a copy of an initial pleading, amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable. 28 U.S.C. §§ 1446(b)(1) and (3). "The thirty-day period under § 1446 begins to run when a defendant is able reasonably and intelligently to conclude from the pleadings and other papers that the amount in controversy exceeds the jurisdictional minimum." *Roberson v. Orkin Exterminating Co., Inc.*, 770 F. Supp. 1324, 1328-29 (N.D. Ind. 1991).

"Generally, where the complaint does not articulate a specific *ad damnum*, the defendant is not on notice that more than [the jurisdictional minimum] is in controversy, and the thirty-day time-clock does not start running until he receives an admission that the plaintiff is indeed seeking more than [the jurisdictional minimum]." *RBC Mortgage Co. v. Couch*, 274 F. Supp. 2d 965, 969 (N.D. Ill. 2003). However, in some cases, a defendant is responsible for ascertaining from a "reasonable and commonsense reading" of the complaint or other paper whether the action is removable. *Id.* Courts in the Seventh Circuit have held that defendants are on notice and the 30-day time clock begins to run where the "presence of grounds for removal are

unambiguous in light of the defendant's knowledge and the claims made." *Id.* (quoting *Huntsman Chem. Corp. v. Whitehorse Tech.*, No. 97 C 3842, 1997 WL 548043, at *5 (N.D. Ill. Sept. 2, 1997) (additional citations omitted)).

Other circuits have specifically articulated policy reasons for the view that notice when a case meets federal jurisdictional requirements ought to be unequivocal. The Fifth Circuit has stated that "[t]his clearer threshold promotes judicial economy. It should reduce 'protective' removals by defendants faced with an equivocal record. It should also discourage removals before their factual basis can be proven by a preponderance of the evidence through a simple and short statement of the facts." *Bosky v. Kroger Tx., LP*, 288 F.3d 208, 211 (5th Cir. 2002). This policy justification is in line with the requirements followed in the Seventh Circuit. Because the burden is on the removing party to show that the amount in controversy exceeds the jurisdictional minimum by a preponderance of the evidence, *see Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir. 1993), the Court may not rely upon the parties' speculation as to whether it has jurisdiction. *See In re High Fructose Corn Syrup Antitrust Lit.*, 936 F. Supp. 530, 532 (C.D. Ill. 1996) ("Speculation will not bear the burden imposed by *Shaw*. . . ."); *King v. Wal-Mart Stores, Inc.*, 940 F. Supp. 213, 217 (S.D. Ind. 1996) ("'Speculation' or the mere 'possibility' that a claim exceeds the jurisdictional amount in controversy is not enough."). Therefore, a defendant should not be required to file its notice of removal when the filings or papers are ambiguous as to the amount in controversy.

### III.  DISCUSSION

The Court must determine at what date Trailer Transit was put on notice that the amount in controversy exceeded $5,000,000.00. Mr. Walker argues that Trailer Transit should have ascertained that this case was removable as of the date he filed his Response in Opposition to

Trailer Transit's Motion for Summary Judgment (Dkt. 1-5 at 3-14).[1]  Despite an attempt to informally seek clarification of Mr. Walker's theory of recovery via an e-mail exchange on November 30 and December 3, 2012, Trailer Transit argues that it was not able to ascertain the amount in controversy until Mr. Walker responded to its discovery request on December 21, 2012.  (Dkt. 1-8.)  Each document will be addressed in turn.

**1.   Mr. Walker's Response in Opposition to Trailer Transit's Motion for Summary Judgment**

First, Mr. Walker argues that Trailer Transit should have been on notice that this case was removable when he filed his Response in Opposition to Trailer Transit's Motion for Summary Judgment on November 19, 2012.  (Dkt. 1-5 at 3-14.)  The Court is not persuaded.  Mr. Walker argues sufficient notice was given because his Response states that he and the class are seeking 71% of the total amount of the Add-On Fees *or* 71% of the Add-On Fees minus Trailer Transit's out-of-pocket costs, and that the former would exceed the $5,000,000.00 jurisdictional threshold.  The specific language that Mr. Walker cites from his Response brief states:

> A reasonable jury could draw at least two conclusions from the circumstance where [Defendant] charged an Add-On Fee in an amount that grossly exceeded its costs: (A) the jury could conclude that *the entire fee* was a scam fee that was not "intended to reimburse" [Defendant], and therefore that **71% of *the entire fee* should have been paid to the Drivers**; or (B) the jury could conclude that the portion of the fee that exceeded [Defendant]'s costs was a scam fee that was not "intended to reimburse" it, and therefore that 71% of that excess should have been paid to the Drivers.  **The Plaintiff has never limited his theory of recovery to a single one of these two possibilities**, and both are consistent with the language of the Lease Agreement.  **Only the jury can determine whether 71% of either *all* or a portion of the Add-On Fees should have been paid to the Drivers** because it was not "intended to reimburse" [Defendant].

---

[1] In his brief, Mr. Walker also argued that Trailer Transit could have ascertained the amount in controversy from the face of the Complaint; however, at oral argument Mr. Walker implicitly conceded that the earliest date the amount in controversy should have been ascertainable was in his Response in Opposition to Trailer Transit's Motion for Summary Judgment.  Thus, the Court will only discuss the documents filed or exchanged on or after November 19, 2012.

Dkt. 11 at 3 (quoting Dkt. 1-5 at 10-11) (emphasis in original).

To the contrary, Trailer Transit argues that this paragraph is taken out of context and is inconsistent with other portions of Mr. Walker's Response brief. In particular, Trailer Transit points to other portions of the Response where Mr. Walker described the disputed Add-On Fees in two categories: (1) fees in which Trailer Transit incurred no out-of-pocket expense; and (2) fees where the amount charged to the customer grossly exceeded Trailer Transit's actual out-of-pocket expense. Trailer Transit argues that the portion of the Response brief which Mr. Walker cites to in support of its motion to remand could be interpreted to mean that the drivers are entitled to 71% of the entire amount of the Add-On Fees in which Trailer Transit incurs no expenses (the first category), or 71% of the portion of the Add-On Fees that exceeds Trailer Transit's actual out-of-pocket expenses (the second category). In both circumstances, the 71% would effectively apply to the gross profit earned by Trailer Transit from the Add-On Fees minus actual expenses, not the total amount of *all* Add-On Fees. Trailer Transit stresses that Mr. Walker distinguishes these two types of fees throughout his Response. *See*, *e.g.*, Dkt. 1-5 at 4 ("Add-On Fee revenue collected for services that were never performed *and* Add-On Fee revenue collected in amounts exceeding the costs of the provided services were not 'items intended to reimburse' Trailer Transit, and therefore that 71% of such Add-On Fee revenues should have been paid to the Drivers."); *Id.* at 7 ("Trailer Transit did not split with Mr. Walker any **portion of the amount over and above what was needed to reimburse it** for these Add-On fees.") (emphasis added). If Mr. Walker and the class were only entitled to 71% of the entire amount of some of the Add-On Fees (*i.e.* those where Trailer Transit had no out-of-pocket costs), the jurisdictional threshold would possibly not be met, and how much of each Add-On Fee constituted a "scam fee" that was not "intended to reimburse" Trailer Transit would be a

question for the jury. In fact, Mr. Walker's Response brief states "there is a genuine issue of fact **for each charge** as to whether it was actually 'intended to reimburse' Trailer Transit. . . ." Dkt. 1-5 at 12 (emphasis added).

Trailer Transit also argues that Mr. Walker's current position on his theory of recovery is further contradicted by his own expert, Steven Reed ("Mr. Reed"), whose affidavit was submitted in support of Mr. Walker's Response in Opposition to Trailer Transit's Motion for Summary Judgment.[2] According to Trailer Transit, Mr. Reed was engaged to determine the economic damages incurred by the class members under the compensation provision of the Lease Agreement. In his report, Mr. Reed determined the difference between the amount charged to the customers for the Add-On Fees and the actual cost to Trailer Transit was "revenue in excess of reimbursement," which was the amount that he used to calculate what a driver was owed for an item, not the entire amount of the Add-On Fees. Mr. Walker argues that his expert does not limit his legal theories in any way as Mr. Reed was not providing full blown damages analysis, but only a subset for summary judgment purposes. However, the expert's affidavit, regardless of why it was prepared, does further support Trailer Transit's interpretation of Mr. Walker's theory of recovery based upon the language of Mr. Walker's Response brief. At best, the Response taken as a whole is ambiguous; thus, it is not sufficient to trigger the 30-day time period for filing a notice of removal.

**2.     Mr. Walker's e-mail response to Trailer Transit's request for clarification**

Next, Mr. Walker argues that its email communications with Trailer Transit on December 3, 2012 provided additional notice to ascertain that the case had become removable. Specifically, following the filing of Mr. Walker's Response in Opposition to Trailer Transit's Motion for Summary Judgment, Trailer Transit's counsel sent a follow-up email to Mr. Walker's

---

[2] This affidavit was redacted from the state court record.

7

counsel on November 30, 2012, seeking clarification on the theory of recovery language from the Response brief by asking the following:

> **Assuming for the sake of argument that, for a particular Add-On Fee, Trailer Transit incurred an out-of-pocket expense but charged the customer more than that out-of-pocket expense,** is it Mr. Walker's position that Mr. Walker would be entitled to 71% of the entire fee, **or is it Mr. Walker's position that Mr. Walker is only entitled to 71% of the difference between the amount charged and Trailer Transit's out-of-pocket expense?**

Dkt. 17 at 10 (quoting Dkt. 11-2 at 1) (emphasis in original). Mr. Walker's counsel responded on December 3, 2012 by copying and forwarding the exact same language in question from the Response brief, but with no additional clarification. Had Mr. Walker responded to Trailer Transit's inquiry more candidly, by answering the specific question asked in its email, explaining that he believed the class was entitled to 71% of the entire amount of the Add-On Fees, Trailer Transit would have been able to file its Notice of Removal within thirty days of the date Mr. Walker filed his Response to Trailer Transit's summary judgment motion. However, by simply repeating the exact same language in question without any additional clarification or explanation, Mr. Walker provided no basis for Trailer Transit to reasonably ascertain that the amount in controversy exceeded the jurisdictional minimum. To reiterate, for the same reasons that the Response brief did not trigger the 30-day notice period, the email response from Mr. Walker on December 3, 2012 did not provide sufficient certainty to trigger it either.

3.   **Mr. Walker's answers to Trailer Transit's request for admissions**

Finally, Trailer Transit argues that it could not reasonably ascertain that the amount in controversy exceeded $5,000,000.00 until December 21, 2012, when Mr. Walker responded to its discovery request, confirming that he and the class were seeking the entire amount of the Add-On Fees, including amounts that constituted Trailer Transit's actual costs. (Dkt. 1-8.) Because this is the first time that Mr. Walker unequivocally stated that he was pursuing a theory

of recovery that would yield an amount in controversy over $5,000,000.00, December 21, 2012 is the date when the 30-day notice period began, and based upon this date Trailer Transit's notice of removal was timely filed.[3]

## IV. CONCLUSION

For the foregoing reasons, Mr. Walker's Motion to Remand (Dkt. 10) is **DENIED**.

**SO ORDERED**.

Date: 06/12/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

Vess Allen Miller
COHEN & MALAD LLP
vmiller@cohenandmalad.com

Christopher J. Eckhart
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
ceckhart@scopelitis.com

James H. Hanson
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
jhanson@scopelitis.com

Robert L. Browning
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
rbrowning@scopelitis.com

---

[3] Thirty days from December 21, 2012 was Sunday, January 20, 2013. Monday, January 21, 2013 was a legal holiday, so January 22, 2013 was the next business day. *See* Fed. R. Civ. P. 6.