# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

HUBERT E. WALKER on behalf of himself )
and all others similarly situated, )
)
                Plaintiff, )
)
                v. )   Case No. 1:13-cv-00124-TWP-DKL
)
TRAILER TRANSIT, INC., )
)
                Defendant. )

## ENTRY ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Trailer Transit, Inc.'s ("Trailer Transit") Motion for Summary Judgment (Dkt. 12). Plaintiff Hubert Walker ("Mr. Walker") filed this breach of contract and unjust enrichment action on behalf of himself and others similarly situated, alleging that Trailer Transit breached the terms of a lease contract by failing to pay the entire amount due in accordance with the compensation provision of the agreement. For the reasons set forth below, Trailer Transit's motion is **GRANTED in part** and **DENIED in part**.

## I. BACKGROUND

The following material facts are not in dispute and are viewed in the light most favorable to Mr. Walker as the non-moving party. Trailer Transit is an Indiana corporation located in Porter, Indiana, and is engaged in the business of providing tow-away, power-only transportation solutions for its customers. To carry out these services, Trailer Transit uses independent contractor owner-operators ("Drivers") with whom it has entered into written lease contracts to handle the pick-up and delivery of trailers ("Lease Agreements"). Mr. Walker was formerly one of these Drivers. He contracted with Trailer Transit from approximately December 7, 2004 until February 24, 2011, and handled approximately 600 shipments of trailers during his successive

one year contract terms.  Over 1,000 other Drivers leased their semi-tractors to Trailer Transit between September 13, 2001 and May 9, 2012 under a form Lease Agreement that was the same or substantially similar to Mr. Walker's form Lease Agreement.

> Appendix B to Mr. Walker's Lease Agreement contained the following provision:
>
> The parties mutually agree that [Trailer Transit] shall pay to [Driver], as rental for the equipment leased herein, for trips under [Trailer Transit]'s operating authorities or in [Trailer Transit]'s service, a sum equal to seventy-one percent (71%) of the gross revenues derived from the use of the equipment leased herein (less any insurance related surcharge and all items intended to reimburse [Trailer Transit] for special services, such as permits, escort services and other special administrative costs including, but not limited to, Item 889).

(the "Compensation Provision").  Dkt. 50-4 at 17.  Mr. Walker alleges that Trailer Transit routinely invoices its customers in excess of the amounts that Trailer Transit paid for services performed by third parties, such as escorts, permits, and for fees paid to third parties (the "Add-On Fees").  He argues that the amount exceeding Trailer Transit's out-of-pocket costs is not "intended to reimburse" Trailer Transit, and thus should be considered revenue to which the Drivers are entitled a percentage under the terms of the Compensation Provision.  Mr. Walker argues that he and the other Drivers should receive 71% of the amount that exceeded Trailer Transit's out-of-pocket costs or, in the case of customer charges for which there is no underlying cost to Trailer Transit, 71% of the entire charge.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court

reviews "the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat the motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and internal quotations omitted). "[N]either the mere existence of some alleged factual dispute between the parties . . . nor the existence of some metaphysical doubt as to the material facts . . . is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

### III. **DISCUSSION**

**A.     Breach of Contract Claim**

Mr. Walker argues that there is a question of material fact as to whether the Add-On Fees charged by Trailer Transit were "items intended to reimburse" Trailer Transit. "Generally, construction of a written contract is a question of law for which summary judgment is particularly appropriate." *Manzon v. Stant Corp.*, 202 F. Supp. 2d 851, 856 (S.D. Ind. 2002) (quoting *N. Ind. Pub. Svc. Co. v. Dabagia*, 721 N.E.2d 294, 299 (Ind. Ct. App. 1999)). Only when a contract is ambiguous or uncertain in its terms will extrinsic facts be useful in construing the contract and ascertaining the intent of the parties; otherwise, interpretation of the contract "is purely a question of law to be determined by the trial court." *Id.* (quoting *Fresh Cut, Inc. v. Fazli*, 650 N.E.2d 1126, 1133 (Ind. 1995). "[I]f reasonable men would find the contract

3

susceptible of more than one construction, ambiguity exists making summary judgment inappropriate. However, if the ambiguity arises not because of extrinsic facts but by reason of the language used, construction of the ambiguous contract is a question of law for the court." *McCae Mgmt. Corp. v. Merchants Nat. Bank & Trust Co. of Indianapolis*, 553 N.E.2d 884, 887 (Ind. Ct. App. 1990). A contract term is not ambiguous merely because the parties disagree about the term's meaning. *Roy A. Miller & Sons, Inc. v. Indust. Hardwoods Corp.*, 775 N.E.2d 1168, 1173 (Ind. Ct. App. 2002).

Ambiguity in a contract may be one of two types: patent or latent. Patent ambiguity is "apparent on the face of the instrument and arises from an inconsistency or inherent uncertainty of language used so that it either conveys no definite meaning or a confused meaning." *Oxford Fin. Grp., Ltd. v. Evans*, 795 N.E.2d 1135, 1143 (Ind. Ct. App. 2003). A latent ambiguity, on the other hand, "rises only upon attempting to implement the contract." *Id.* at 1144. Patent ambiguities present pure questions of law, while latent ambiguities are resolved as questions of fact. *Felker v. Sw. Emergency Med. Serv., Inc.*, 521 F. Supp. 2d 857, 867 (S.D. Ind. 2007). Extrinsic evidence is admissible to explain the meaning of a latent ambiguity, but is not admissible to explain a patent ambiguity. *Id.*

The first issue that the Court must decide is whether there is an ambiguity in the contract with regard to whether Mr. Walker and the Drivers are entitled to any portion of the Add-On Fees, as asserted by Mr. Walker. In determining whether the terms of a contract are ambiguous, the Court gives words their usual and common meaning, unless it is clear from the entire contract and its subject matter that another meaning was intended. *Boswell Grain & Elevator, Inc. v. Kentland Elevator & Supply, Inc.*, 593 N.E.2d 1224, 1227 (Ind. Ct. App. 1992). The Court finds that the parties merely disagree on the interpretation of the Compensation Provision with regard

4

to which revenue sources are part of the Drivers' compensation, and it is not ambiguous based upon the plain meaning of the language used in the contract. As such, resolution of this issue presents a question of law and the Court will enforce the contract according to its terms. *Rice v. Meridian Ins. Co.*, 751 N.E.2d 685, 688 (Ind. Ct. App. 2001). The Court must ascertain the intent of the parties at the time the contract was executed, and will accept an interpretation of the contract that "harmonizes its provisions as opposed to one which causes the terms to be conflicting." *Felker*, 521 F. Supp. 2d at 867.

Mr. Walker focuses his argument on the phrase "items intended to reimburse," arguing that the amounts charged to customers for Add-On Fees in excess of the amount it cost Trailer Transit to provide the service is not "intended to reimburse" Trailer Transit, and therefore should not be excluded from the Drivers' compensation calculation. However, the Court finds that an important phrase in the Compensation Provision that Mr. Walker ignores is the term "gross revenues." Gross revenues are the total amounts received from customers for services or goods, while net revenues are the amounts received from customers minus the expenses related to the sale. Mr. Walker is essentially asking the contract to be interpreted such that he and the other Drivers would be entitled to receive 71% of the *net* revenues from these other services – the amount paid by the customer minus the amount it actually cost Trailer Transit to provide the service.[1] The Compensation Provision does not state that the Drivers are entitled to a percentage of net revenues or profits. The Compensation Provision expressly excludes the revenue from

---

[1] Mr. Walker also takes an overly simplified view of the amount that it actually costs Trailer Transit to provide a customer these various services. For example, the cost of procuring a permit for a customer is not just the cost of the permit itself, but the overhead costs involved in obtaining the permit, such as personnel, facilities, utilities, etc. The expense of providing a service involves much more than just the direct costs. If customers were charged for services which they did not receive, that is a contract issue between the customer and Trailer Transit. The correct remedy for this situation would not be for Mr. Walker and the other Drivers to be able to profit from alleged fraudulent charges by receiving 71% of the gross revenues from services that allegedly were not performed or for which there was no underlying cost. However, as stated above, to say that Trailer Transit incurred no expense in providing services to customers is an oversimplification that does not take into account reimbursement for Trailer Transit's indirect costs.

"any insurance related surcharges" and "all items intended to reimburse [Trailer Transit] for special services" from the gross revenues that form the basis for the Drivers' compensation. Dkt. 50-4 at 17. In order to be consistent with the other language in the Lease Agreement, this language must be interpreted to mean the gross revenue received from insurance related surcharges and the gross revenue for items intended to reimburse Trailer Transit for special services are excluded from the Drivers' compensation, not net revenues.

To accept Mr. Walker's interpretation of the Compensation Provision would be to read into the Lease Agreement a provision that not only does not exist in the contract—that Drivers are entitled to 71% of net revenues for certain items—but that also conflicts with the plain meaning of the term "gross revenues." "The court must accept an interpretation of the contract which harmonizes its provisions as opposed to one which causes them to be conflicting." *McCae Mgmt. Corp.*, 553 N.E.2d at 887. The Court's interpretation is also consistent with the phrase "items intended to reimburse" Trailer Transit; the gross revenue from these charges do reimburse Trailer Transit for special services, but there is nothing in the contract or the law that limits Trailer Transit to charging only the direct cost of these services, or from charging customers a premium or surcharge for providing these services. These "special services" are provided by Trailer Transit, not the Drivers, and the Compensation Provision states that the Drivers are entitled to 71% of the gross revenues "derived from use of the equipment leased herein." Dkt. 50-4 at 17. Based upon the plain and ordinary meaning of the contract language, the Court finds that the Add-On Fees are excluded in their entirety from gross revenue that forms the basis of the Drivers' compensation, and Mr. Walker and the Drivers are not entitled to any portion of the gross revenues, or net revenues, that fall into these categories.

Having determined that the Lease Agreement does not provide for Mr. Walker and the other Drivers to receive a percentage of the net revenues for insurance related surcharges and Add-On Fees, the Court finds that the Compensation Provision also contains a latent ambiguity with regard to what charges actually fall into these categories and are thus excluded from the Drivers' compensation. A latent ambiguity "rises only upon attempting to implement the contract." *Oxford Fin. Grp., Ltd.*, 795 N.E.2d at 1144. While "insurance related surcharges" is a fairly specific category, it is unclear from the face of the contract what charges are included in the category of "special services" and "special administrative costs." The Compensation Provision excludes from gross revenues "special services, *such as* permits, escort services and other special administrative costs[,]" indicating that these are only examples of charges for "special services." Dkt. 50-4 at 17 (emphasis added). The Compensation Provision goes on to state that "special administrative costs" include, but are not limited to, "Item 889." *Id.* From this language, it appears that there are other charges excluded from the Drivers' compensation calculation; however, there is nothing in the contract to clearly indicate what other charges besides permits and escort services are included in "special services" or the other items that would be included in "special administrative costs" besides Item 889.

For example, Trailer Transit argues that drayage charges should be included in this category of special services and costs because they are similar to escort services. However, this is a question of fact requiring extrinsic evidence; the Court cannot determine from the face of the contract, as a matter of law, that drayage charges fall within the excluded Add-On Fees. Where the meaning of the contract needs to be determined by extrinsic evidence due to a latent ambiguity, its construction is a matter for the fact finder and the resolution of the issue is inappropriate for summary judgment. *Fresh Cut, Inc.*, 650 N.E.2d at 1133. Where, such as here,

7

technical terms or terms of art are used in a contract, this general rule also applies. *See Ecorp, Inc. v. Rooksby*, 746 N.E.2d 128, 131 (Ind. Ct. App. 2001) ("[I]f language of the contract is ambiguous, or if technical words, local phrases or terms of art are used and evidence is properly admitted showing meaning, the question becomes one of fact." (quoting *Timberline Equip. Co. v. St. Paul Fire & Marine Ins. Co.*, 576 P.2d 1244, 1246 (Or. 1978)). Extrinsic evidence will be necessary to determine what charges fall into the categories of "special services" and "special administrative costs" in the trucking industry or which charges have customarily been included in these categories in the course of dealings of the parties. Therefore, the Court concludes that, with the exception of permits, escort services, and Item 889 charges, which are specifically mentioned in the Lease Agreement, there is a question of material fact as to what constitutes other "special services" and "other special administrative costs" for purposes of the Compensation Provision of the Lease Agreement.

The Court concludes that Mr. Walker and the Drivers are not entitled to 71% of the portion of Trailer Transit's Add-On Fees that exceed its actual out-of-pocket costs under the terms of the Compensation Provision of the Lease Agreement, and specifically are not entitled to 71% of charges for insurance related costs, permits, escort services, and charges billed under Item 889. However, the Court finds that there is a question of material fact requiring extrinsic evidence as to what other charges are included in "special services" and "other special administrative costs" such that they should also be excluded from the gross revenue amount that forms the basis of Mr. Walker's and the Drivers' compensation. Summary judgment on the breach of contract claim is therefore **GRANTED in part** and **DENIED in part**.

### B. Unjust Enrichment

Mr. Walker has also asserted, in the alternative, an equitable claim for unjust enrichment, alleging that Trailer Transit has received and retained funds under such circumstances that in equity and good conscience, Trailer Transit ought not be permitted to retain. Under the circumstances of this case, Mr. Walker's equitable claim is precluded by the existence of the Lease Agreement. "When the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law." *Coppolillo v. Cort*, 947 N.E.2d 994, 998 (Ind. Ct. App. 2011). The only exception to this rule is where an express contract does not fully address a subject; however, that is not the case here. *Id.* The Compensation Provision of the Lease Agreement fully addresses how the Drivers' compensation is to be calculated and thus provides an adequate remedy at law. "A plaintiff may not pursue an equitable remedy when there is a remedy at law." *Id.* Therefore, Trailer Transit is entitled to summary judgment on Mr. Walker's equitable claim, and its Motion is **GRANTED**.

### IV. CONCLUSION

For the reasons set forth above, Trailer Transit's Motion for Summary Judgment (Dkt. 12) is **GRANTED in part** and **DENIED in part** on Mr. Walker's breach of contract claim, and is **GRANTED** on Mr. Walker's unjust enrichment claim.

**SO ORDERED.**

Date: 02/14/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

Vess Allen Miller
COHEN & MALAD LLP
vmiller@cohenandmalad.com

Christopher J. Eckhart
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
ceckhart@scopelitis.com

James H. Hanson
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
jhanson@scopelitis.com

Robert L. Browning
SCOPELITIS GARVIN LIGHT HANSON & FEARY PC
rbrowning@scopelitis.com